IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY PRICE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 C 8548 |
| | ) | |
| PITT OHIO EXPRESS, LLC, | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Anthony Price has sued Pitt Ohio Express, LLC ("Pitt Ohio") for terminating him based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Pitt Ohio, having complied with Local Rule 56.2 by providing Plaintiff with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated herein, the Court grants Defendant's summary judgment motion.

## Facts

Unless otherwise noted, the following facts are undisputed. In 2004, Pitt Ohio, a company that provides trucking services, hired Price as a truck driver. Price is African-American. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 3, 6, 7.

Pitt Ohio's Substance Drug and Alcohol Policy states that any drivers who "engage in the illegal use of drugs on or off duty" will be terminated. *Id.* ¶ 9. All truck drivers who work for Pitt Ohio are subject to the drug and alcohol regulations mandated by the U.S. Department of Transportation and Federal Motor Carrier Safety Administration ("FMCSA"), which includes random drug testing. *Id.* ¶ 14.

1

Each quarter, Compliance Safety Systems ("CSS"), a company that Pitt Ohio contracts to randomly select employees for drug testing, sends an email to managers at Pitt Ohio containing a list of selected employees. *Id.* ¶ 15; Def.'s Ex. 9, Sakas Dep. at 103. CSS predetermines whether the drivers who are randomly selected will undergo a drug test or a breath alcohol test. Def.'s LR 56.1(a)(3) Stmt. ¶ 25.

If randomly selected, an employee must go to Concentra Medical Center for drug testing. *Id.* ¶ 15; Def.'s Ex. 9, Sakas Dep. at 128. It is undisputed that, since 2007, Pitt Ohio has terminated every driver in its Chicago terminal who has failed a random drug test. Def.'s LR 56.1(a)(3) Stmt. ¶ 12.

On October 19, 2010, Price was notified that he had been selected to take a random drug test. *Id.* ¶ 30. This was Price's first random drug test since he began working for Pitt Ohio in 2004. *Id.* ¶ 31.

During the fourth quarter of 2010, five other Pitt Ohio truck drivers were notified that they had been randomly selected to take a drug test: Eric Jennings, who is African-American; Johnny Molina, Anton Morales, and Salvador Salcedo, who are all Hispanic; and John Winkler, who is Caucasian. *Id.* ¶ 32. They, along with Price, underwent drug testing at Concentra Medical Center. Def.'s LR 56.1(a)(3) Stmt. ¶ 33. The drug test results for Jennings, Molina, Morales, Salcedo, and Winkler were negative. *Id.*; Def.'s Ex 4, Results for Fourth Quarter 2010 Drug Test Results, at PITT000148- PITT000152. However, Price's test indicated positive for marijuana. Def.'s LR 56.1(a)(3) Stmt. ¶ 13; Def.'s Ex 4, Results for Fourth Quarter 2010 Drug Test Results, at PITT000147. In fact, Price concedes that he used marijuana in September 2010. Def.'s LR 56.1(a)(3) Stmt. ¶ 11.

On October 21, 2010, Jeff Mercadante, who was Pitt Ohio's Director of Safety and whose office was located at the company's corporate headquarters in Pittsburgh, Pennsylvania,

received the results of Price's drug test and decided to terminate Price based on the failed drug test. Def.'s Ex. 11, Mercadante Decl. ¶¶ 5-6. On October 22, 2010, Mercadante notified Price that he was terminated because he had tested positive for marijuana. Def.'s LR 56.1(a)(3) Stmt. ¶ 13.

In opposition to summary judgment, Plaintiff points to certain evidence that, in his view, indicates that Pitt Ohio discriminated against him based on his race. First, Plaintiff states that he had never been randomly selected for drug testing prior to October 2010. Second, Plaintiff argues, and Pitt Ohio disputes, that, when his supervisor, Roman Sakas, notified the drivers that they had been selected for a drug test, Sakas gave Plaintiff, but not Salcedo, a Federal Drug Testing Custody and Control Form that was typically used in situations where driver is tested for drugs at a facility other than Concentra. *Compare id.* ¶ 35, *with* Pl.'s LR56.1(b)(3)(B) Stmt. ¶ 35. Additionally, Plaintiff cites to another driver, Richard Pherigo, who had violated Pitt Ohio's Substance Drug and Alcohol Policy in 2010, but was not terminated by Pitt Ohio. Instead, Pherigo was permitted to work at Pitt Ohio until June 4, 2011. Def.'s Ex. 13, Pherigo Decl. ¶ 8. It is undisputed, however, that to the extent that Pherigo had violated the policy, Mercadante had not been informed of it. Def.'s LR 56.1(a)(3) Stmt. ¶ 23.

## Discussion

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986),

3

and "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *Gordon v. FedEx Freight, Inc*., 674 F.3d 769, 772-73 (7th Cir. 2012).

Title VII prohibits employers from discriminating against an employee "because of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A] plaintiff may prove discrimination either directly or indirectly." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).

"To avoid summary judgment under the direct approach, the plaintiff must produce sufficient evidence, either direct or circumstantial, to create a triable question of intentional discrimination in the employer's decision." *Silverman v. Bd. of Educ. of the City of Chi.*, 637 F.3d 729, 733 (7th Cir. 2011). Under this approach, "the circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013). In other words, it must "lead . . . directly to the conclusion that an employer was illegally motivated, without reliance on speculation." *Good v. Univ. of Chi. Med. Ctr*., 673 F.3d 670, 676 (7th Cir. 2012). Types of circumstantial evidence used under the direct approach include: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc*., 653 F.3d 582, 587 (7th Cir. 2011).

"A plaintiff also may proceed under the indirect, burden-shifting method adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Id.* Under the indirect method, "a plaintiff must produce evidence that he (1) belongs to a protected class, (2) met his employer's legitimate performance expectations, (3) suffered an adverse employment action, and (4) was treated worse than similarly situated employees outside

4

the protected class." *Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011). "If the plaintiff satisfies these requirements, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the employment action." *Bates v. City of Chi.*, 726 F.3d 951, 955 (7th Cir. 2013). "If the employer satisfies that burden of production, the plaintiffs must establish by a preponderance of the evidence that the proffered reasons for the alleged discriminatory action are pretextual." *Radentz v. Marion Cnty.*, 640 F.3d 754, 757 (7th Cir. 2011).

Under either the direct or indirect approach, Price has failed to create a triable issue as to whether Pitt Ohio intentionally discriminated against him based on race when it terminated him. In opposing summary judgment, Price raises four arguments to demonstrate that his termination was motivated by racial animus. The Court addresses each in turn.

First, Price believes that his selection to undergo a drug test in 2011 was motivated by race based on the fact that he had worked for Pitt Ohio since 2004 and had not been randomly selected prior to that time. But, this fact alone does not create a reasonable inference that Price's selection in 2011 was based upon his race. Indeed, the record is devoid of any facts from which a trier of fact could determine the probability that any particular driver would have been selected for a random drug test during the period form 2004 and 2011. Indeed, it is quite possible that other non-African American drivers were selected on more than one occasion during the relevant time period. In any event, Price has failed to present any facts that would indicate that CSS' selection of his name for drug testing was inconsistent with random selection.

Second, Price points out that, when his supervisor, Roman Sakas, notified him that he had been selected for random drug testing, Price was handed a form that was typically used in situations where driver is tested for drugs at a facility other than Concentra. In contrast, Salcedo, another employee who had been randomly selected for drug testing, was not. *Compare* Def.'s LR 56.1(a)(3) Stmt. ¶ 35, *with* Pl.'s LR56.1(b)(3)(B) Stmt. ¶ 35.

From this, Price appears to argue that because he was provided this form, he had to undergo a more rigorous drug testing protocol than the other drivers. But, again, the record is devoid of any facts to support this argument. In fact, Price's Local Rule 56.1 statement of additional facts does not establish the purpose of the form; whether the form required him to provide information that the other drivers were not required to provide; whether Price was required to fill out the form; whether Price, in fact, ever filled out the form; or whether Pitt Ohio referred to the form when deciding to terminate his employment. Given the uncontroverted facts that CSS, not Pitt Ohio, randomly selected the five truck drivers to be drug tested in the fourth quarter of 2011, that all five truck drivers underwent drug testing, and that only Price failed the drug test, no rational jury could hold that the mere fact that Price was given a form that the other four truck drivers were not is in and of itself evidence of a racially motivated termination.

Third, Price contends that another co-worker, Mohammed Hammouedh, testified that Price's supervisor, Roman Sakas, had stated that "he was going to get [Mr. Price]." According to Plaintiff, Hammouedh believed this to mean that "Sakas wanted to terminate the Plaintiff." Pl.'s Resp. Br. 5. This argument has two flaws.

First, because Price did not include this purported fact either in response to Defendant's LR 56.1 statement of facts or in his own statement of additional facts, this fact is not properly before the Court. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 1-56; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 1-17. Furthermore, Price provides no citation to the record to support the statement, and the Court is not obligated to search the record to find support for factual statements that were not included in the parties' LR 56.1 statement of fact. *See* Pl.'s Resp. Br. 5. That said, the Court fails to find any mention of such a statement in the portion of Hammouedh's deposition that Plaintiff provides (Pl.'s Ex. H, Hammouedh Dep. at 29-32), Sakas's deposition (Pl.'s Ex. A, Sakas Dep.

at 1-113), Price's deposition (Pl.'s Ex. B, Price Dep. at 1-44), or Price's own declaration (Pl.'s Ex. E, Price Decl. ¶¶ 1-20).

Furthermore, even if Price were able to surmount this procedural and evidentiary hurdle, Sakas's statement at most shows that Sakas wanted to terminate Price, but there is no evidence to suggest that Sakas' desire was motived by Price's race. And, in any event, Price was fired by Mercadante, not Sakas, and the record is devoid of any evidence to suggest that Sakas had input into Price's termination.

Fourth, Price points to another truck driver, Richard Pherigo, who also had violated Pitt Ohio's Substance Drug and Alcohol Policy, but was not terminated. Price's reliance on Pherigo is twofold. First, Price argues that Pherigo is a similarly situated employee not in the protected class who received more favorable treatment than he. Next, Price contends that Pherigo's circumstances demonstrate that Pitt Ohio's invocation of the failed drug test when firing Price was merely a pretext for race discrimination. Neither argument is persuasive.

Price's argument that he and Pherigo are similarly situated simply is not supported by the record. "[T]he similarly-situated inquiry is flexible, common-sense, and factual." *Coleman*, 667 F.3d at 841. The court asks: "are there enough common features between the individuals to allow a meaningful comparison?" *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). "[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." *Id.* Here, the parties' LR 56.1 statements of fact do not identify Pherigo's race, making it impossible to determine whether he is a member of the protected class. *See* Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1-56; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 1-56; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 1-17; Def.'s Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 1-17. Of course, if Pherigo is African-American, Price's claim fails.

But, even if Pherigo is not a member of the protected class, a number of factors preclude the finding that Pherigo and Price are similarly situated.

Both Price and Pherigo were truck drivers at Pitt Ohio's Chicago terminal and that they had the same supervisor, but that is where the similarities end. As for Price, it is undisputed that Pitt Ohio relied on CSS to randomly select certain Pitt Ohio employees, including Price, for drug testing during the fourth quarter of 2010. Def.'s LR 56.1(a)(3) Stmt. ¶¶ 15, 24-25. CSS sent Pitt Ohio an email with the randomly selected employees' names, and a Pitt Ohio employee then notified the employees of their selection. *Id.* The selected employees were tested at Concentra Medical Center. *Id.* ¶ 15. A medical review officer at Concentra Medical Center reviewed the test results and informed Jeff Mercadante, Pitt Ohio's Director of Safety, who works in Pitt Ohio's headquarters in Pittsburgh, Pennsylvania, of the test results. *Id.* ¶ 13; Def.'s Ex. 11, Mercadante Decl. ¶ 5. Because Price's test results showed that he had tested positive for marijuana, and Pitt Ohio's policy is to terminate any driver who "engages in the illegal use of drugs on or off duty," Mercadante decided to terminate Price. *Id.* ¶¶ 9, 13. And, significantly, it is undisputed that Mercadante decided to terminate Price based on the failed random drug test, and this decision was made without input from Sakas. Def.'s LR 56.1(a)(3) Stmt. ¶ 13.

In comparison, Pherigo's purported violation of the substance abuse policy consisted of drinking alcohol on the job. He was not subjected to a random drug test, and the parties dispute whether Sakas had reasonable cause to subject Pherigo to alcohol testing in 2010.[1] However, even if the Court were to assume that Sakas should have subjected Pherigo to alcohol testing, the fact that Sakas did not do so, at best, creates a reasonable inference that Sakas was a bad

---

[1] For example, it is disputed whether other workers smelled alcohol on Pherigo's breath repeatedly at work such that it would be obvious to Sakas that Pherigo was working while under the influence. Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 43. It is also disputed whether Sakas had to pick up Pherigo during Pherigo's route on one occasion in June/July 2010 because he had been under the influence or whether Pherigo was having a panic attack unrelated to any consumption of alcohol. *Id.* ¶ 46.

supervisor for not enforcing Pitt Ohio's alcohol policy. It does not create a reasonable inference that the decision to termination Price, which was made Mercadante and Mercadante alone, was racially motivated.

This distinction is material. For if the record contained any facts or inferences that would support the notion that Sakas contributed to the decision to terminate Price or could have prevented Price's termination, but elected not to do so, then a trial would be necessary to determine whether the difference in Sakas' purported treatment of Pherigo and Price was based on a prohibited racial animus. But no such facts are in the record. Along the same lines, just as there are no facts from which a jury can infer that Sakas had a hand in Price's termination, it also is undisputed that Mercadante was unaware that Pherigo had supposedly violated the policy. Def.'s LR 56.1(a)(3) Stmt. ¶ 23. Accordingly, Plaintiff's efforts to cast Pherigo as a similarly situated employee fails. *See Coleman v. Donahoe*, 667 F.3d 835, 847-48 (7th Cir. 2012) (explaining that courts "generally require[–] a plaintiff to demonstrate at a minimum that a comparator was treated more favorably by the same decision-maker who fired the plaintiff."); *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("A similarly-situated employee must have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff.").

Lastly, no rational jury could find that Mercadante's reason for terminating Price was a pretext for race discrimination. "Pretext may be established directly with evidence that [the employer] was more likely than not motivated by a discriminatory reason, or indirectly by evidence that the employer's explanation is not credible." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993) (citations omitted). "Creating a triable pretext issue with indirect evidence is a difficult task . . . ." *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001). The plaintiff must show that "an employer's proffered reasons are not credible . . . by

9

demonstrating that the reasons are factually baseless, were not the actual motivation for the discharge, or were insufficient to motivate the discharge." *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 983 (7th Cir. 1999).

Price concedes that he used marijuana in September 2010, prior to his drug test in October 2010, and thus no reasonable jury could conclude that his termination for testing positive for marijuana was factually baseless. *See* Def.'s LR 56.1(a)(3) Stmt. ¶ 11. Given that it is undisputed that Mercadante decided to terminate Price after receiving the results of Price's failed drug test from Concentra Health Center, without any input from Sakas and without any first or secondhand knowledge that Pherigo was ever under the influence of alcohol at work, no rational jury could find that the failed drug test was not the actual motivation for Price's termination. *See id.* ¶¶ 13, 23. Finally, given the undisputed fact that since 2007, Pitt Ohio has consistently terminated every driver in its Chicago Terminal who has failed a random drug test, no rational jury could find that Price's failed drug test was an insufficient basis to motivate Pitt Ohio's termination of his employment. *See id.* ¶ 12.

In sum, under either the direct or indirect method, Price has failed to create a triable issue of material fact regarding whether his termination was motivated by race. Accordingly, the Court grants Defendant's motion for summary judgment.

## **Conclusion**

For the reasons set forth herein, the Court grants Pitt Ohio's motion for summary judgment [doc. no. 65]. This case is hereby terminated.

SO ORDERED          ENTER: 3/18/14

                                        **JOHN Z. LEE**
                                        **United States District Judge**